**C. Henry EKWEANI, Plaintiff,**

v.

**UNITED STATES DEPARTMENT, OF AGRICULTURE, Defendant.**

No. 00–0617 (RJL).

United States District Court, District of Columbia.

June 15, 2004.

C. Henry Ekweani, Columbia, MD, pro se.

Ijeamaka N. Ekweani, Baltimore, MD, for Plaintiff.

Kathleen M. Frye, Marina Utgoff Braswell, Paul A. Mussenden, U.S. Attorney's Office, Vincent H. Cohen, Jr., Washington, DC, for Defendant.

## *ORDER*

LEON, District Judge.

Plaintiff C. Henry Ekweani ("Ekweani") brings an employment discrimination claim against the Department of Agriculture ("DOA"), alleging that DOA's failure to select him for multiple job vacancies was based on race and national-origin and therefore constituted discrimination in violation of 42 U.S.C. § 2000e. Before the Court is DOA's motion for summary judgment, arguing two separate grounds for dismissing Mr. Ekweani's claim: (1) failure to file an EEO complaint within the proper time period; and (2) failure to make out a prima facie case of discrimination. For the following reasons, the Court finds that Ekweani has made out a prima facie case

of discrimination as to only one of the claims of employment discrimination, and is not time barred from proceeding with that claim. Accordingly, DOA's motion is GRANTED in part and DENIED in part, as described below.

## BACKGROUND

In 1991, Ekweani, a black male of Nigerian origin, applied for five positions at the Foreign Agricultural Services Branch ("FAS") of DOA that are the subject of this lawsuit. The five openings for "International Economists" were listed in two vacancy announcements. Pl. Am. Opp. to Def. Mot. for Summ. J. ¶¶ 1–4. At that time Ekweani was a doctoral candidate in Economics, in addition to holding a Bachelor of Science in Chemical Engineering, a B.A. in Economics, a Masters in Business Administrative Science. Ekweani was placed on a certificate of eligibles for both vacancy announcements and on November 13, 1991, he was interviewed by a recruitment committee. Id. ¶¶ 7–8. After successfully passing that initial stage of interviews, the committee rated Ekweani as a grade level 12, the highest grade for the available positions. Id. ¶ 6. Ekweani's name was placed on a selection certificate and was given to the officials responsible for selecting the applicants to fill the five positions. Pl. Am. Opp. to Def. Mot. for Summ. J. ¶ 8. Eventually, Ekweani was interviewed by the selecting officials for three of the five vacant positions. Pl. Am. Opp. to Def. Mot. for Summ. J. ¶¶ 10, 12, 16.

Diana Wannamaker interviewed Ekweani for a position in the Import Policies Program Division, but ultimately hired Sampson Amaofo ("Amaofo") at a grade 11. Def. Stmt. of Undisputed Facts ¶ 13; Pl. Am. Opp. to Def. Mot. for Summ. J. ¶¶ 12–13, p. 17. While it is not clear from

the record what Amaofo's national origin actually is, Wannamaker apparently believed that he, like Ekweani, was Nigerian. Def. Mot. for Summ. J. Ex. 2.

Cina Radler ("Radler") interviewed Ekweani for a similar position in the Grain and Feed Division. Ekweani alleges that during the interview, Radler told him that FAS did not hire doctoral candidates, which he was at the time, and that she considered him over-qualified. She also stated that Ekweani could only be hired at a grade 11. Ultimately, Ekweani was not selected for the position. The parties disagree, however, as to which of two white males, Timothy Powers or Scott Thompson, filled the position. Compare Pl. Am. Opp. to Def. Mot. for Summ. J. ¶¶ 10, 25 with Def. Stmt. of Undisputed Facts ¶ 15.

Finally, Ekweani was interviewed by Ira Branson ("Branson") for a position in the Policy Analysis Branch. Branson allegedly informed Ekweani that DOA does not hire persons with Ph.D's and that he would be bored with the position. Two women, one white and one black, were present for the interview and Ekweani alleges that Branson told him that the black female was brought in to make Ekweani feel more comfortable. Pl. Am. Opp. to Def. Mot. for Summ. J. ¶ 17. Ekweani was not hired for this position either. Rather, he was told that hiring was "frozen" and the position was being held for a returning foreign service officer. Pl. Am. Opp. to Def. Mot. for Summ. J. ¶ 18; Def. Stmt. of Undisputed Facts ¶ 16.

Ekweani argues that in each instance, the person ultimately hired was less qualified for the position. Furthermore, he contends that he should have been interviewed for the remaining two positions, for which less qualified Caucasian applicants were selected.[1] Pl. Am. Opp. to Def. Mot.

1. Ekweani also alleges Title VII violations regarding two other positions for which DOA

failed to interview Ekweani. Compl. ¶¶ 41, 44. He claims that DOA has a policy and

for Summ. J. ¶¶ 14, 21. He attributes these actions in part to an alleged practice by DOA of not hiring black candidates at a grade 12. Id. at ¶ 13, Compl. ¶ 45.

Ekweani filed a complaint with an EEO counselor alleging race and national origin discrimination in November 1992. The complaint was originally dismissed as untimely, but the EEOC, on appeal, found that the complaint was timely filed because Ekweani had not known about the 30–day time limit and the agency had been on notice within the time limit even though no formal complaint had been filed. Pl. Am. Opp. to Def. Mot. for Summ. J. ¶ 31. Ultimately, the EEO counselor conducted an investigation of his charges and concluded that there had been no discrimination by DOA employees. Id. at ¶ 32.

### STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment may support his motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324,

106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e)). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a Title VII action where there is no direct evidence of discrimination, the Court must apply the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Accordingly, the plaintiff in this case must establish a prima facie case of discrimination such that a jury could infer unlawful discrimination from the circumstantial evidence, a burden which the Supreme Court has characterized as "not onerous." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to show that the reasons for rejecting the complainant were legitimate, and not motivated by discriminatory intent. The burden of persuasion, however, remains on the plaintiff at all times and the defendant need only produce admissible evidence from which a jury could conclude that there was no unlawful discrimination. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If the defendant is able to carry this burden, the presumption of discrimination created by the plaintiff's prima facie case is removed and the plaintiff must establish, by a preponderance of the evidence, that the reasons offered by the defendant are pretext for intentional

---

practice of refusing to hire black people or people of African origin above a grade 11. Compl. ¶ 45. Additionally, Ekweani also alleges violations of sections 1981 and 1988 of

Title 42. Because DOA did not address any of these claims in its Motion for Summary Judgment, they will not be addressed in this opinion.

discrimination. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817).

## ANALYSIS

### A. *Exhaustion of Administrative Remedies*

◼ As an initial matter, DOA argues that Ekweani's suit is barred because he failed to contact a counselor within the 30–days of learning that he had not been selected, as required by 29 C.F.R. § 1613.214(a)(1)(i). Indeed, the record indicates that Ekweani knew by February of 1992 that he had not been selected for the positions for which he was interviewed by Wannamaker and Radler, *see* Pl. Am. Opp. to Def. Mot. for Summ. J. ¶ 15, but that he did not contact an EEO counselor until July of that year. *See* Pl. Am. Opp. to Def. Mot. for Summ. J. Ex. 2 at 1. Applicable regulations, however, provide that this limitation period can be extended if the complainant was neither notified of the time limit, nor aware of its existence. 29 C.F.R. § 1613.214(a)(4); *see also* Pl. Am. Opp. to Def. Mot. for Summ. J. Ex. 2 at 4. Initially, Ekweani's complaint was dismissed by the agency as untimely. Ekweani appealed however and the agency reversed itself because there was no evidence that Ekweani was familiar with the EEO process or that he was notified of the procedures to follow or of the limitations. To date, DOA has offered no evidence contrary to the EEOC finding. In the absence of any additional evidence by DOA that Ekweani had actual knowledge of the limitations period, the Court will not grant summary judgment for the defendant on this basis under circumstances where there is a serious issue, at a minimum, as to the plaintiff's knowledge of the applicable limitations period.

### B. *Failure to State a Claim*

◼ To establish a prima facie case of discrimination, such that the burden of production shifts to the defendant, the plaintiff must establish that: (1) he is a member of a protected class; (2) he applied for and was qualified for the available position; (3) despite his qualifications he was rejected; and (4) either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. For the following reasons, Ekweani has failed to satisfy all four elements of a prima facie case of discrimination with respect to two of the three positions for which he was interviewed.

◼ In the case of the Import Policies Program position, Ekweani claims that he was discriminated against based on his national origin. He asserts that Amaofo, the person hired for the position, was from Ghana and, therefore not part of his protected class of Nigerian. By contrast, Wannamaker indicated in her testimony that she believed that Amaofo, like Ekweani, was Nigerian. Her belief was based at least in part on Amaofo's resume which indicated that he was writing his dissertation on Nigerian development and that he had traveled to Nigeria a number of times. Def. Mot. for Summ. J. Ex 2. Either way, however, it is not material that Wannamaker may have been mistaken. Under Title VII the plaintiff must prove an intent to discriminate on the part of the employer. If Wannamaker mistakenly thought both men were Nigerian, the plaintiff by definition can not establish that she rejected Ekweani because of his nationality. Thus, the plaintiff is not entitled to the inference of nationality discrimination under the *McDonnell Douglas* test.

◼ With regard to the Policy Analysis Branch position, Ekweani similarly fails to

establish an inference of racial discrimination because he has neither shown that someone not of his protected class (e.g. Caucasian) filled the position nor that the position remained vacant and the employer continued to seek applicants. In short, Ekweani's uncontested assertion that he was told that the position was frozen for a returning foreign service officer leaves unaddressed whether and/or by whom, that position was ultimately filled. Under *McDonnell Douglas*, that burden falls to Ekweani. Ekweani's speculation that DOA may have hired a Caucasian candidate can not satisfy this burden. Specific facts, not conclusory allegations, are necessary for a reasonable jury to find that Ekweani was the victim of illegal discrimination. See *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999).

█ Finally, in the case of the Grain and Feed Division position, Ekweani's contention of racial discrimination, by contrast, meets the prima facie requirements set forth in *McDonnell Douglas*. Ekweani contends that Scott Thompson, a lesser qualified Caucasian male, was the person selected by DOA for this particular position. As evidence, Ekweani offers an internal report of staffing patterns in the Grain and Feed Division of DOA and records of personnel action regarding Scott Thompson. Pl. Am. Opp. to Def. Mot. for Summ. J. Ex. 4, 17. DOA's contention that it hired Timothy Powers, a "reinstatement eligible" Caucasian who did not have to participate in the normal competitive hiring process misses the point under Title VII. Either way, Ekweani has established that a person not of his protected class was hired. DOA's response, at most, raises a suggestion, without any proof, that DOA's selection for the position was non-discriminatory. Thus, Ekweani has successfully pled a prima facie case as to this claim and DOA has failed to demonstrate that a jury could not reasonably find racial discrimination by DOA if all justifiable inferences were drawn in Ekweani's favor.

## CONCLUSION

Accordingly, the Court hereby **GRANTS** DOA's motion for summary judgment with regard to the Import Policies Program and Policy Analysis Branch positions, and **DENIES** DOA's motion for summary judgment with regard to the Grain and Feed Division position.

**SO ORDERED.**